

**SO ORDERED.**

**SIGNED September 30, 2010.**

_____
                    **ROBERT SUMMERHAYS**
             **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

DONALD ANTHONY O'CONNOR
SUZETTE BUCKNER O'CONNOR                    CASE NO. 07-20489

    Debtors
----------------------------------------------------------------
DONALD ANTHONY O'CONNOR
SUZETTE BUCKNER O'CONNOR

VERSUS                                      ADVERSARY NO. 07-2012

ROBERT BUTCH TROST, SR., LAKE
AREA SUPPLY, INC., d/b/a LAKE
AREA INSULATION DRYWALL AND PAINT
----------------------------------------------------------------
ROBERT BUTCH TROST, SR., and
LAKE AREA SUPPLY, INC., d/b/a
LAKE ARA INSULATION, DRYWALL AND PAINT

VERSUS                                      ADVERSARY NO. 08-2013

DONALD ANTHONY O'CONNOR
SUZETTE BUCKNER O'CONNOR
----------------------------------------------------------------
MEMORANDUM RULING
----------------------------------------------------------------

The present matter is an adversary proceeding filed by Richard Butch Trost, Sr. ("Trost") and Lake Area Supply, Inc. d/b/a Lake Area Insulation, Drywall and Paint ("Lake Area Supply" and, together with Trost, "Plaintiffs") against Donald Anthony O'Connor and Suzette Buckner O'Connor (together, the "Debtors") seeking a denial of the discharge under 11 U.S.C. § 727(a), and a declaration that debts allegedly owed by Debtors to Plaintiffs are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). The court took the case under advisement following a trial on the merits. As explained further below, the court grants Plaintiffs' nondischargeability claim under 11 U.S.C. § 523(a)(6) against Donald O'Connor. In all other respects, the relief requested by Plaintiffs is denied.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Memorandum Ruling shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

Trost and Lake Area Supply hired Donald O'Connor in 2000 as a drywall installer, estimator, insulator, and painter. On July 3,

-2-

2001, O'Connor entered into the Independent Contractor Agreement and Covenant Not to Compete. The covenant not to compete purportedly prohibited O'Connor from engaging in the following activities within a 75 mile radius of Lake Charles for two years from the date the agreement is terminated: the business of drywall insulation, estimating, installing insulation, painting and related activities, and the solicitation of customers of Lake Area Supply. In early July 2003, O'Connor left his position with Lake Area Supply. Plaintiffs allege that O'Connor had been conducting a competing drywall business prior to July 2003. On July 15, 2003, Trost filed a petition in the 14th Judicial District Court in Calcasieu Parish seeking monetary and injunctive relief against O'Connor. Trost alleged that O'Connor solicited Lake Area Supply's customers and started a competing drywall and painting business in violation of his covenant not to compete. In or around July 15, 2003, Darlene Washington executed Articles of Organization and Limited Liability Company Initial Report for an LLC named Complete Insulation Drywall & Paint, LLC ("Complete Insulation"). Washington was a friend of Suzette O'Connor. Nine days later, on July 24, 2003, Donald O'Connor executed Articles of Organization and Limited Liability Company Initial Report for Complete Drywall & Paint, LLC ("Complete Drywall"). The articles and initial report for Complete Drywall were filed by O'Connor with the Louisiana

-3-

Secretary of State on July 29, 2003.

The state court granted Trost a preliminary injunction on August 1, 2003, "enjoining and restraining Donald O'Connor from carrying on or engaging in his own competing business and/or from soliciting customers of Robert Butch Trost, Sr., d/b/a Lake Area Insulation, Drywall and Painting, for a period of two years from July 7, 2003, within a 75 mile radius of Lake Charles, Louisiana, including Calcasieu Parish, Allen Parish and Cameron Parish." Trost filed a Motion for Contempt on October 3, 2003, alleging that O'Connor had violated the preliminary injunction by continuing to compete against Trost and Lake Area Supply in violation of the covenant not to compete. The state court ultimately found O'Connor in contempt of the preliminary injunction and sentenced O'Connor to 12 months imprisonment with all but the last 30 days suspended. Shortly after the court's contempt ruling, Donald and Suzette O'Connor executed a document purporting to sell their membership interest in Complete Drywall to Donald O'Connor's brother, Robert O'Connor, for "$100 and other valuable consideration." (Pl. Exh. D-4). On May 12, 2004, the state court granted Trost a permanent injunction on the same terms as the August 1st preliminary injunction. (Trost Exh. D-13). At the trial on the permanent injunction, O'Connor stipulated that he had competed with Trost after leaving his employment in July 2003. On June 1, 2006, the

-4-

state court granted a money judgment against O'Connor in the sum of $470,000.00 in damages and $46,385.73 in attorney fees. In its oral ruling, the court found that O'Connor had violated the covenant not to compete and had violated the August 1st preliminary injunction by continuing to operate a competing drywall and painting business through Complete Drywall. The court further found that O'Connor's attempt to transfer Complete Drywall to his brother was a sham:

> I am satisfied that the defendant in this case
> basically put his brother up as a front. He
> continued to operate a business, although it
> was put in his brother's name.

(Trost Exh. D-19).

Complete Drywall filed for relief under Chapter 11 of the Bankruptcy Code on September 29, 2006. That case was subsequently converted to a case under Chapter 7 of the code on January 4, 2007. On January 9, 2007, O'Connor filed Articles of Organization for yet a third entity, Complete Drywall Services, L.L.C. Donald O'Connor and Suzette O'Connor filed for relief under Chapter 11 of the Code on July 25, 2007. This case was converted to Chapter 7 on January 14, 2008. Plaintiffs then commenced the present adversary proceeding seeking a denial of the discharge under 11 U.S.C. § 727(a)(1), (2), (3), (4), (5), and (7), and seeking to exclude their debt from discharge under 11 U.S.C. § 523(a)(2), (4), and

-5-

(6).

**DISCUSSION**

**A.  Denial of Discharge under Section 727(a).**

Plaintiffs seek a denial of the discharge for both Donald O'Connor and Suzette O'Connor under 11 U.S.C. § 727(a)(2), (3), (4), (5), and (7).  Plaintiffs have the burden of proof in establishing grounds to deny the discharge under section 727(a).  The relevant provisions of section 727(a) provide that:

> (a)  The court shall grant the debtor a discharge, unless--
>
> . . .
>
> (2)  the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (A)  property of the debtor, within one year before the date of the filing of the petition; or
>
> (B)  property of the estate, after the date of the filing of the petition;
>
> (3)  the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4)  the debtor knowingly and fraudulently, in or in connection with the case--

-6-

(A)  made a false oath or account;

(B)  presented or used a false claim;

(C)  gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D)  withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5)  the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

. . .

(7)  the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider...;

Plaintiffs contend that the Debtors' discharge should be denied under section 727(a)(3) and(5) because they failed to produce documents, records, or other information accounting for checks and cash deposits in the accounts of Complete Drywall during the period O'Connor was violating the covenant not to compete and during the period Complete Drywall's bankruptcy case was pending. Plaintiffs also contend that O'Connor's discharge should be denied under sections 727(a)(2) and (4) because O'Connor failed to disclose

-7-

certain assets in the bankruptcy case, including a bond for deed, a 1997 Freightliner, a personal injury lawsuit, and a legal malpractice lawsuit. Section 727(a)(3) does not require that books and records be maintained in any particular form. The scale and complexity of the debtor's finances should be considered in determining whether any deficiencies in the debtor's records justifies denial of the discharge. See In re Sendecky, 283 B.R. 760 (8th Cir. BAP 2002). Considering the record in its entirety, the court concludes that any lapses in the Debtors' records do not support denial of the discharge under section 727(a)(3) or (5). The record also reflects that items omitted from the Debtors' bankruptcy schedules were subsequently disclosed in amended schedules and administered by the chapter 7 trustee. Accordingly, the court concludes that the record does not support denial of the Debtors' discharge under sections 727(a)(4) or (7).

**B.   Nondischargeability Under 11 U.S.C. § 523(a).**

Plaintiffs also seek a determination that the damages and attorneys' fees awarded by the state court are nondischargeable under various provisions of 11 U.S.C. § 523(a). As with a section 727 action, the creditor has the burden of proof in an action to determine the dischargeability of a debt under section 523(a). Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of

-8-

bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each and every element of a statutory exception to discharge under 11 U.S.C. § 523 et seq. by a preponderance of the evidence. The elements of a nondischargeability claim are a matter of federal law. However, where, as here, the debt is based on a state court judgment, collateral estoppel may bar re-litigation of issues decided by a state court. See In re Keaty, 397 F.3d at 270 (citing Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); In re Schwager, 121 F.3d 177, 181 (5th Cir.1997). Where the state court decided a crucial issue to non-dischargeability in the case below and followed the same evidentiary standard, collateral estoppel precludes re-litigation of that issue. Grogan v. Garner, 498 U.S. at 285.

   1.   **11 U.S.C. § 523(a)(2)(A)— Fraud.**

      Section 523(a)(2)(A) provides that "money, property, services, or an extension, renewal, or refinancing of credit" that is obtained through "false pretenses, a false representation, or actual fraud" is subject to exception from a debtor's discharge. 11 U.S.C. § 523(a)(2)(A). In order for a debt to fall within

-9-

section 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." Vizzini v. Vizzini ( In re Vizzini), 348 B.R. 339, 343 (Bankr. E.D. La. 2005), aff'd, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting In re Chavez, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). In order to exclude a debt from discharge under section 523(a)(2)(A), the plaintiff must prove that: (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intent to deceive plaintiffs; (4) the plaintiff relied on these misrepresentations; and (5) the plaintiff's injury was sustained as a proximate result of the representations made by debtors. In re Bercier, 934 F.2d 689, 692 (5th Cir. 1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995).

The first issue for the court is whether the state court's findings support the elements of a section 523(a)(2) action. Collateral estoppel, for the purpose of nondischargeability, applies in bankruptcy court only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question-that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue-and the facts supporting the court's findings are discernible from that court's record." Dennis v. Dennis (In re Dennis), 25 F.3d

-10-

274, 278 (5th Cir. 1994). The state court concluded that O'Connor's actions violated the covenant not to compete and the preliminary injunction, that O'Connor "put his brother up as a front" in order to carry on his business in violation of the preliminary injunction, and that O'Connor's violations of the non-compete and preliminary injunction were "intentional acts." (Pl. Exh. D, Tab 19 at 3, 15 - 16). While these findings support the court's conclusion that O'Connor violated the non-compete and the preliminary injunction, they are not "specific, subordinate, factual findings" identical to the essential elements of a nondischargeability action under section 523(a)(2). Accordingly, Plaintiffs cannot rely solely on the collateral estoppel effect of the state court's findings as grounds for relief under section 523(a)(2).

Plaintiffs, nevertheless, contend that the evidence in the record independently supports nondischargeability under section 523(a)(2) in connection with the state court's findings on O'Connor's violation of the covenant not to compete and the state court record. According to Plaintiffs, O'Connor's scheme to evade the covenant not to compete – setting up multiple business entities under different ownership and transferring one entity to his brother after the contempt hearing on the preliminary injunction – supports a finding that O'Connor "obtained work through false

-11-

pretenses and misrepresentations." (Pl. Pre-trial Memorandum at part F). While this evidence clearly supports a finding that O'Connor breached the covenant not to compete, it does not establish every essential element of a fraud claim under section 523(a)(2) by a preponderance of the evidence – specifically, that O'Connor made a false representation and that **Plaintiffs** relied on these misrepresentations. Accordingly, Plaintiffs have not met their burden under section 523(a)(2).

**2. 11 U.S.C § 523(a)(4) – Fraud or Defalcation by a Fiduciary.**

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). Plaintiffs rely on the "defalcation" prong of section 523(a)(4). (Pl. Pre-trial Memorandum at part E). In order to establish a nondischargeability claim for defalcation by a fiduciary, Plaintiffs must first establish that their relationship with O'Connor fell within the narrow confines of section 523(a)(4). Not all fiduciary relationships under state law fall within section 523(a)(4). The type of relationship required to trigger liability for fraud or defalcation under section 523(a)(4) is determined by federal law. A fiduciary under section 523(a)(4) is narrowly defined, applying only to technical or express trusts. In re Bennett, 989 F.2d 779, 784 (5th Cir. 1993)(citing In re Angelle, 610 F.2d 1335 (5th

-12-

Cir.1980)); see also In re Tran, 151 F.3d 339, 342 (5th Cir. 1998); In re Schwager, 121 F.3d 177, 186 (5th Cir. 1997). The requisite trust relationship must exist prior to the act creating the debt and without reference to that act. In re Bennett, 989 F.2d at 784; see also In re Tran, 151 F.3d at 342 (trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong). "In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor must have been a trustee before the wrong and without any reference to it." In re Bennett, 989 F.2d at 784 (citation omitted). Therefore, constructive trusts or trusts *ex malificio* are insufficient to create a fiduciary relationship within the meaning of section 523(a)(4). See In re Tran, 151 F.3d at 342.

Plaintiffs contend that the covenant not to compete created a fiduciary relationship, and that O'Connor's actions in violation of that agreement amount to defalcation by a fiduciary. However, even if that agreement were sufficient to create a fiduciary relationship under state law, it does not establish the presence of an express trust relationship required under Fifth Circuit precedent to trigger the fiduciary exceptions to discharge in section 523(a)(4). Accordingly, Plaintiffs have not met their burden under section 523(a)(4).

-13-

### 3. 11 U.S. § 523(a)(6) – Willful and Malicious Injury.

Section 523(a)(6) provides for the nondischargeability of debts arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity." Courts have often disagreed over the level of culpability required under section 523(a)(6). In <u>Kawaauhau v. Geiger</u>, the Supreme Court put some of these disputes to rest. 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court held that injuries resulting from negligent or reckless conduct are insufficient to satisfy the requirements of section 523(a)(6). A finding that the debtor engaged in intentional acts that resulted in injury is similarly insufficient. <u>Id</u>. <u>Geiger</u> did not, however, resolve all of the questions over the appropriate standard for a section 523(a)(6) claim. The circuits employ different standards in determining whether a debtor's conduct amounts to a "willful and malicious injury ... to another entity or to the property of another entity." In order for conduct to qualify as willful and malicious under Fifth Circuit precedent, the debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm." <u>Williams v. IBEW Local 520 (In re Williams)</u>, 337 F.3d 504, 509 (5th Cir. 2003) (quoting <u>In re Miller</u>, 156 F.3d 598, 606 (5th Cir. 1998)). Injuries covered by section 523(a)(6) are not

-14-

limited to physical damage or destruction; harm to personal or property rights is also covered by this provision. 4 Collier on Bankruptcy ¶ 523.12(4) (15th ed. rev.2003).

Plaintiffs contend that Donald O'Connor's violations of the covenant not to compete and the state court's preliminary injunction amount to a "willful and malicious injury by the debtor." A claim that a debtor intentionally violated a covenant not to compete is generally not sufficient to support a finding of a "willful and malicious injury" under section 523(a)(6). While the state court specifically found that Donald O'Connor acted intentionally when he breached the covenant not to compete, a finding of intent alone does not support a finding of willful and malicious conduct. Plaintiffs, however, contend that O'Connor also wilfully violated the state court preliminary injunction and attempted to conceal his violation of the injunction by transferring Complete Drywall to his brother.

Plaintiffs rely on In re Williams, 337 F.3d 504 (5th Cir. 2003), in arguing that O'Connor's violation of the preliminary injunction amounts to a willful and malicious injury. In Williams, the plaintiffs alleged that the debtor violated the terms of a collective bargaining agreement by hiring non-union contractors. Id. at 507. The debtor ultimately consented to the entry of an agreed final judgment and decree requiring compliance with the

-15-

collective bargaining agreement. Nevertheless, the debtor
continued to hire non-union contractors in violation of the agreed
final judgment and decree. Id. The district court found the
debtor in contempt and determined that the plaintiffs had been
deprived of approximately $106,911 in wages and benefits as a
result of the debtor's violation of the agreed judgment. Id. at
511. The Fifth Circuit affirmed the bankruptcy court's ruling that
this debt was nondischargeable under section 523(a)(6). According
to the court, "[f]ailure to obey a court order constitutes willful
and malicious conduct, and a judgment against a defiant debtor is
excepted from discharge." Id. at 512. Other courts have similarly
held that damages arising from willful violations of court orders
are nondischargeable, including cases involving injunctions issued
to enforce covenants not to compete. See PRP Wine Internat'l v.
Allison ( In re Allison ), 176 B.R. 60, 64 (Bankr. S.D. Fla. 1994)
(denying discharge to a debtor who continued to breach a
non-competition clause in an employment agreement after a state
court issued a temporary injunction). The Spring Works, Inc. v.
Sarff (In re Sarff), 242 B.R. 620, 627-28 (B.A.P. 6th Cir. 2000);
Dentrust Dental Internat'l v. Rosenberg (In re Rosenberg), 2007 WL
2156282 at *4 (Bankr. N.D. Ohio July 23, 2007) (collateral estoppel
prevented debtor from relitigating contempt order with respect to
willful and malicious injury caused by violation of non-compete

-16-

agreement); <u>Heyne v. Heyne, (In re Heyne)</u> 277 B.R. 364, 369 (Bankr. N.D. Ohio 2002)("A finding of contempt-which at the very least requires that the alleged contemptor must have knowingly disobeyed the underlying order-clearly lends itself to a finding of a deliberate and intentional act"); <u>Bundy American Corp. v. Blankfort (In re Blankfort)</u>, 217 B.R. 138, 145 (Bankr. S.D.N.Y. 1998); <u>Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)</u>, 242 B.R. 229, 238 (Bankr. W.D.N.Y. 1999) ("When a court ... issues an injunction ... telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of the order are *ipso facto* the result of a 'willful and malicious injury'.")

Turning to the present case, the state court's findings and judgment supports a finding of nondischargeability under section 523(a)(6) and <u>Williams</u> with respect to Donald O'Connor. After leaving Lake Area Supply in July 2003, O'Connor continued to compete with Lake Area Supply in violation of his covenant not to compete. O'Connor did so by setting up two separate business entities, one of which was purportedly owned by a family friend. O'Connor continued to violate the covenant not to compete even after the state court entered a preliminary injunction enforcing the covenant. The record supports the state court's finding that the violation of the preliminary injunction was intentional.

-17-

Specifically, on November 25, 2003 – more three months after the
entry of the injunction – the state court ruled that O'Connor's
actions violated the preliminary injunction and held him in
contempt. O'Connor then continued compete with Plaintiffs in
violation of the preliminary injunction and attempted to conceal
his actions by transferring one of his business entities to his
brother for $100 on December 4, 2003. (Pl. Exh. D-19 at 3). The
state court concluded that O'Connor continued to operate the
business despite the transfer to his brother, and that O'Connor
used his brother as a "front" to evade the preliminary injunction.
(Id.) O'Connor counters that he did not intentionally violate the
covenant not to compete and preliminary injunction because he was
following the advice of his counsel at the time. The fact that
O'Connor may have acted on the advice of counsel after leaving Lake
Area Supply does not explain or excuse his continuing efforts to
evade the preliminary injunction and conceal his actions even after
the state court's November 25th contempt ruling. In sum, Plaintiffs
have met their burden of establishing an exception to
dischargeability under section 523(a)(6) with respect to Donald
O'Connor and the state court judgment entered June 2, 2006.

Plaintiffs, however, also seek a determination of
nondischargeability with respect to Suzette O'Connor. Plaintiffs
contend that Ms. O'Connor assisted her husband in evading the

-18-

covenant not to compete and the preliminary injunction. Specifically, Plaintiffs allege that Ms. O'Connor asked a friend to help set up one of the Complete Drywall entities shortly after Donald O'Connor left Lake Area Supply. (Pl. Pre-trial Brief at part G). Plaintiffs also allege that Ms. O'Connor used a personal credit card to help fund one of the Complete Drywall entities and signed checks on behalf of the entity. Considering the record as a whole, Suzette O'Connor's actions do not amount to the willful and malicious conduct required under section 523(a)(6). She was not a party to the state court proceeding, and the state court's preliminary injunction did not apply to her. Accordingly, the court denies Plaintiffs' request to extend the section 523(a)(6) exclusion to Suzette O'Connor.

   **4.  Amount of the June 2nd Judgment Excluded From Discharge.**

   The state court awarded Trost a total of $470,000 in damages and $46,385.73 in attorney fees as a result of Donald O'Connor's violation of the covenant not to compete and the preliminary injunction. (Pl. Exh. D-19 at 10). The court based this damage figure on his finding of $40,000 a month in damages for the period that O'Connor violated the covenant – July 7, 2003 through June 21, 2004. The court will give collateral estoppel effect to the state court's findings on damages. However, the court must reduce the amount of the state court judgment that is nondischargeable under

-19-

section 523(a)(6) because the conduct that is the basis for this court's nondischargeability finding is the violation of the state court's preliminary injunction, which was entered August 1, 2003 – approximately a month after O'Connor left Lake Area Supply. See Williams, 337 F.3d at 514 (distinguishing between damages suffered before and after entry of the agreed judgment and decree). Accordingly, $430,000 of the $470,000 damages awarded by the state court are nondischargeable under section 523(a)(6) as to Donald O'Connor. The $46,385.73 in attorneys' fees are also nondischargeable because they reflect costs incurred by Plaintiffs as a result of O'Connor's willful and malicious conduct. See Adams v. Zentz, 157 B.R. 141, (W.D. Mo. 1993) (creditor could show requisite injury if he was required to expend money on attorneys' fees as result of debtor's willful and malicious conduct).

### CONCLUSION

For the foregoing reasons, the court finds for Plaintiffs on their claim under 11 U.S.C. §§ 523(a)(6) with respect to Donald O'Connor. Plaintiffs are entitled to a judgment declaring that **$476,385.73** of the state court judgment entered in Trost, et al. v. O'Connor, et al., Cause No. 2003-3741 (14th JDC, Calcasieu Parish) is nondischargeable. Plaintiffs shall submit a judgment in conformity with this Memorandum Ruling within 30 days.

###

-20-